UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

GREAT AMERICAN INSURANCE
COMPANY, *as subrogee for Vectren
Corporation*,

    Plaintiff,

v.

NEXTDAY NETWORK HARDWARE
CORP., DONALD BANYONG, and
JOHN/JANE DOES 1 through 10,

    Defendants.

Civil Action No. TDC-14-1451

## MEMORANDUM OPINION

This case arose after Defendant Nextday Network Hardware Corp. ("Nextday") bought hundreds of thousands of dollars' worth of information technology ("IT") equipment from an individual who stole the equipment from his employer, Vectren Corporation ("Vectren"). Plaintiff Great American Insurance Company ("Great American"), Vectren's insurer, filed suit against Nextday; the president of Nextday, Donald Banyong; and ten unidentified Nextday employees who participated in the sale (collectively, "Defendants"). The Complaint asserts claims for conversion, aiding and abetting conversion, and civil conspiracy. Presently pending is Defendants' Motion to Dismiss for Failure to State a Claim. ECF No. 7. The Motion is ripe for disposition, and no hearing is necessary to resolve the issues. *See* Local Rule 106.5 (D. Md. 2014). For the reasons that follow, the Motion is DENIED.

## BACKGROUND

The following facts are described as alleged in the Complaint. ECF No. 1. Christopher Brian Crowe was an Associate Network and Telecommunications Analyst at Vectren. In November 2012, Vectren discovered that Crowe had been stealing new and slightly used IT equipment from Vectren data centers and other locations. The fair market value of the stolen IT equipment totaled $919,338.05. Crowe then sold the stolen IT equipment through online auction website eBay.com to Nextday for $228,609.15. Great American alleges that Banyong and ten unidentified Nextday employees participated in purchasing the equipment from Crowe, including setting the purchase price and providing the shipment information.

Crowe was eventually arrested by the Evansville Police Department ("EPD") in Indiana and charged with two counts of theft. He later pleaded guilty to the charges. In March 2013, the EPD informed Nextday that the IT equipment it purchased from Crowe was stolen. Despite the EPD's attempts to make arrangements for the equipment's return to Vectren, Banyong resisted and told the EPD that he planned to sell the remaining equipment he bought from Crowe. Great American paid Vectren for the loss and, on April 30, 2014, filed suit against Defendants. Defendants now move to dismiss.

## DISCUSSION

### I. Legal Standards

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662. 678 (2009). A claim is plausible when the facts pled "allow[] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint

as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

The parties have attached multiple exhibits to their memoranda briefing the Motion, including email correspondence, website printouts, and an affidavit from Banyong. Typically, when deciding a Rule 12(b)(6) motion, the court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a Rule 56 motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Because the attached exhibits do not adequately address the merits of the claims presented, and the opportunity for sufficient discovery has not yet been afforded in this case, the Court excludes all attached exhibits from consideration and construes the Motion as a motion to dismiss under Rule 12(b)(6) for failure to state a claim.

This case is governed by Maryland law. As the forum state, Maryland's choice of law rules apply. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Rawl's Auto Auction Sales, Inc. v. Dick Herriman Ford, Inc.*, 690 F.2d 422, 426 (4th Cir. 1982). Maryland follows the *lex loci delicti* principle in assessing choice of law. *Lab. Corp. of Am. v. Hood*, 911 A.2d 841, 845 (Md. 2006). Under this principle, in tort actions where the acts occurred in more than one state, Maryland courts "apply the law of the State where the injury – the last event required to constitute the tort – occurred." *Id.* Defendants are located in Maryland. Compl. ¶¶ 2–4. Consequently, Defendants bought the stolen IT equipment from Maryland, had it delivered to Maryland, and then sold it from Maryland to other buyers. *See* Defs.' Mem. Supp. Mot. Dismiss at 7–8, ECF No. 7. Because Maryland is where the last act necessary to complete

Defendants' alleged conversion occurred, Maryland law applies in this case.[1] *See First Union Nat'l Bank v. N.Y. Life Ins. & Annuity Corp.*, 152 F. Supp. 2d 850, 854 (D. Md. 2001).

## II. Conversion

Great American sufficiently states a plausible claim for conversion by alleging that Defendants purchased goods that Crowe had stolen from Vectren, then sold them to other buyers. Under Maryland law, conversion involves any distinct act of dominion or control "'exerted by one person over the personal property of another in denial of his right or inconsistent with it.'" *Allied Inv. Corp. v. Jasen*, 731 A.2d 957, 963 (Md. 1999) (quoting *Interstate Ins. Co. v. Logan*, 109 A.2d 904, 907 (Md. 1954)). In *Inmi-Etti v. Aluisi*, 492 A.2d 917 (Md. Ct. Spec. App. 1985), the Maryland Court of Special Appeals found Pohanka Oldsmobile-GMC, Inc. ("Pohanka") liable for conversion where Pohanka had purchased a car from an individual who had taken possession of the car without the owner's authorization. *Id.* at 918–19, 923. Particularly where Great American has alleged that Nextday sold the equipment it purchased from Crowe after it had been notified by the police that the property was stolen, Compl. ¶ 15, it has successfully pleaded a cause of action for conversion.

Defendants argue that the entrustment provision of the Commercial Law Article of the Maryland Code, which adopts a provision of the Uniform Commercial Code ("UCC"), precludes any conversion claim. This provision provides that "[a]ny entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to

---

[1] Defendants analyze this matter under Maryland law but identify Ohio and Indiana as additional states with equities in the case. *See* Defs.' Mem. Supp. Mot. Dismiss at 7–8. They acknowledge, however, that because all three states adopted the Uniform Commercial Code provision at issue in this case, the "decision should be the same regardless of this Court's choice-of-law determination." *Id.* at 8. Although Great American does not concede that Maryland law applies, it acknowledges that the relevant Maryland law does not conflict with the laws of those other jurisdictions. *See* Pl.'s Mem. Opp. Defs.' Mot. Dismiss at 7 n.1, ECF No. 8.

4

a buyer in ordinary course of business." Md. Code Ann., Com. Law § 2–403(2) (West 2014). The entrustment provision is meant to safeguard unsuspecting buyers who purchase goods from merchants in good faith. *See Lakes Gas Co. v. Clark Oil Trading Co.*, 875 F. Supp. 2d 1289, 1304–05 (D. Kan. 2012); 2 William D. Hawkland *et al.*, Uniform Commercial Code Series § 2-403:4 (2014). Thus, if a party entrusts its goods to a "merchant," a "buyer in the ordinary course of business" who purchases those goods from the merchant cannot be liable for conversion even if the entrusting party later disputes whether the merchant had authority to make the sale. *See Robison v. Gerber Prods. Co.*, 765 F.2d 431, 433 (4th Cir. 1985) (applying the identical UCC provision under South Carolina law).

For the entrustment provision to apply, (1) there must be an entrustment of goods; (2) that entrustment must be to a "merchant who deals in goods of that kind"; and (3) the transfer must be to a buyer in the ordinary course of business who purchases in good faith, without knowledge that the sale violates ownership rights. *Id.* Here, Defendants argue that the entrustment provision applies because Crowe entrusted the stolen IT equipment to Nextday, Nextday is a merchant who deals in goods of that kind, and Nextday was a buyer in the ordinary course of business. Defs.' Mem. Supp. Mot. Dismiss at 11–13. This argument, however, suffers from three fundamental deficiencies. First, the entrustment provision inherently requires three separate parties – an owner, a merchant, and a buyer – as it only applies when a rightful owner attempts to sue a buyer after the buyer purchases goods from a merchant. Nextday cannot be both the merchant and the buyer in this scenario.

Second, the entrustment provision leaves the merchant potentially liable for conversion. *See* 2 William D. Hawkland et al., Uniform Commercial Code Series § 2-403:4 (noting that, although the entrustment provision protects the buyer from suit, the owner "will have rights

against the merchant who sold the goods for conversion or other common law remedies as appropriate"). Thus, if the provision applies here and Nextday is the merchant, as Nextday claims, then the entrustment provision would not protect Nextday from suit. Instead, the provision would protect only the subsequent buyers to whom Nextday sold the stolen IT equipment.

Third, the entrustment provision does not apply where the "entrusting" party stole the goods. At its core, the entrustment provision works by giving the merchant "power to transfer all rights of the entruster to a buyer in ordinary course of business." *See* Md. Code Ann., Com. Law § 2–403(2). In *Inmi-Etti*, the court explained that only a person with "voidable" title has the power to entrust goods under this provision. *Id.* at 920 (citing Md. Code Ann., Com. Law § 2–403(1) ("A person with voidable title has power to transfer a good title to a good faith purchaser for value.")). "Voidable" title is obtained where the owner voluntarily transfers the goods. *Id.* at 923. If the goods are stolen, only "void" title is obtained, and the thief cannot pass along good title to a good faith purchaser. *Id.* at 921, 923. Where, as here, the "entrusting" party, Crowe, had stolen the equipment, he had only void title and therefore had no rights in the goods to transfer to the merchant, who then could not lawfully transfer any rights to the buyer. *See Inmi-Etti*, 492 A.2d at 923 ("If the goods are stolen otherwise obtained against the will of the owner, only void title can result."); 2 William D. Hawkland et al., Uniform Commercial Code Series § 2-403:4 ("[I]f the entruster has no rights, such as when the entruster is a thief, the buyer in ordinary course of business also gets no rights.").

The facts of *Inmi-Etti* illustrate the inapplicability of the entrustment provision to Nextday. There, the plaintiff had allowed an acquaintance, David Butler, to receive her new car; Butler then convinced the Motor Vehicle Administration to issue him a certificate of title in his

name and sold the car without her authorization to Pohanka, a car dealer, which in turn sold it to a third-party customer. *Inmi-Etti*, 492 A.2d at 918–19. The court held that § 2–403, which includes the entrustment provision, did not apply because Butler had void title when he sold the car to Pohanka, and that as a result, Pohanka had "obtained no title, and its sale of the vehicle constituted a conversion."[2] *Id.* at 923. The court rejected Pohanka's claim that it was not liable because Butler had presented a "duly issued certificate of title in his name," such that Pohanka was a "good faith purchaser for value." *Id.* Rather, under the court's conclusion, the entrustment provision cannot apply "where the seller had no title at all." *Id.* at 924.

Notably, the *Inmi-Etti* court reached that conclusion even though it was unclear whether Butler had stolen the car. *See id.* ("[T]he record is not sufficient for us to decide whether Butler actually stole the [plaintiff's] vehicle."). Here, where Great American expressly alleges that Crowe stole the IT equipment, Compl. ¶ 9, the facts more strongly indicate that Crowe obtained void title and could not convey good title to Nextday as the merchant. Even then, as discussed above, the entrustment provision would protect only the buyers of the goods from Nextday, not Nextday itself.

Even if Nextday were viewed as the "buyer in the ordinary course of business," the entrustment provision still would not apply. Under that analysis, Vectren would be the owner; Crowe, the merchant; and Nextday, the buyer. The provision would not apply because Vectren did not entrust the IT equipment to Crowe. *Robison*, 765 F.2d at 433. "Entrusting" under the provision includes "any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of

---

[2] As to the entrustment provision specifically, the court added that the provision did not apply because "there was no evidence that Butler was a 'merchant who deals in goods of that kind' (i.e. automobiles)." *Id.* at 921.

whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law." Md. Code Ann., Com. Law § 2–403(3). "Delivery," in turn, means "voluntary transfer of possession." § 1–201(b)(15). So for the entrustment provision to apply, the transfer of possession of goods from the owner to the merchant must be voluntary. Here, because Crowe stole the IT equipment from Vectren, Compl. ¶ 9, the transfer of possession was not voluntary, so there was no entrustment. *See Inmi-Etti*, 492 A.2d at 923.

Furthermore, there is no basis to find that Crowe was a "merchant who deals in goods of that kind." *Robison*, 765 F.2d at 433. Great American alleges that Crowe was an Associate Network and Telecommunications Analyst at Vectren. Compl. ¶ 8. Although the Complaint does not contain allegations describing Crowe's job responsibilities in detail, there is nothing to indicate that a telecommunications analyst is a legitimate merchant dealing in the purchase and sale of new and slightly used IT equipment. Because the entrustment provision does not apply, Great American has sufficiently alleged a conversion claim against Defendants.

**III.     Aiding and Abetting Conversion**

Great American adequately states a claim for aiding and abetting conversion. A person can be held liable for a tort "if he, by any means (words, signs, or motions) encouraged, incited, aided or abetted the act of the direct perpetrator of the tort." *Duke v. Feldman*, 226 A.2d 345, 347 (Md. 1967). There must be both a direct perpetrator of the tort and an underlying tortious activity. *Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1049–50 (Md. 1995). In this case, these requirements are met because there is no dispute that Crowe stole the IT equipment from Vectren, which constitutes the tort of conversion.

Defendants argue that no underlying tortious activity exists because they purchased the IT equipment lawfully after Crowe had already converted it. By providing an outlet through which Crowe could dispose of the stolen goods, however, Nextday could be found to have aided and abetted the conversion. *Cf. United States v. Armetta*, 191 F.3d 448, 1999 WL 717262, at *5 (4th Cir. 1999) (rejecting an argument that "one cannot aid and abet a completed" offense and finding that the defendant aided and abetted a criminal fraud scheme by serving as an outlet for selling illegally modified goods). Defendants also argue that they did not know the equipment was stolen until after they had sold it all. At this stage, however, Great American alleges that Defendants were notified by the EPD in March 2013 that the equipment was stolen, yet persisted in selling the remaining equipment. Compl. ¶¶ 14–15. Great American also alleges that Defendants had indicators that the equipment was stolen because Crowe was selling an unusually large volume of IT equipment at far below market value. *Id.* ¶¶ 30–31. The alleged facts therefore sufficiently support the conclusion that, by buying and selling the stolen equipment, Defendants knowingly aided Crowe in committing conversion. Because the facts alleged must be construed as true for a motion to dismiss, the Court concludes that Great American sufficiently states a claim for aiding and abetting conversion.

IV.     **Civil Conspiracy**

Great American has also sufficiently alleged a claim of civil conspiracy. Civil conspiracy requires (1) a confederation of two or more persons by agreement or understanding; (2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not itself illegal; and (3) actual legal damage resulting to the plaintiff." *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 284 (Md. 2007).

Defendants argue that Great American fails to state a civil conspiracy claim because nothing in the Complaint suggests an agreement or understanding between the parties. Proof of civil conspiracy, however, can be in the form of circumstantial evidence. *Daugherty v. Kessler*, 286 A.2d 95, 101 (Md. 1972). A civil conspiracy can be established "by inferences drawn from the nature of the acts complained of, the individual and collective interests of the alleged conspirators, the situation and relation of the parties, their motives and all the surrounding circumstances preceding and attending the culmination of the common design." *Id.*

As such, the facts alleged sufficiently support an inference that Defendants bought and sold goods from Crowe with a common understanding that their actions would facilitate the unlawful conversion of property, and that Vectren was thereby harmed. Defendants purchased a large volume of IT equipment at a price four times lower than fair market value, from an individual seller with no ostensible background in the procurement or sale of that type of equipment. Compl. ¶¶ 12, 21, 30–31, 34. Under these circumstances, one could infer that Nextday was part of a conspiracy by acting as a "fence" to dispose of goods stolen by Crowe. *Cf. United States v. Blackman*, 746 F.3d 137, 144 (4th Cir. 2014) (finding sufficient evidence to support a criminal conspiracy conviction based on defendant's role as a "fence" who sold stolen goods). In particular, the allegation that Nextday persisted in trying to sell the equipment even after it was notified by the police that the property was stolen, Compl. ¶ 15, 22, provides significant support for this claim. Great American has thus pleaded facts sufficient to establish that Defendants were part of a civil conspiracy with Crowe to convert Vectren's property.


## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss for Failure to State a Claim, ECF No. 7, is DENIED. A separate Order follows.

Date: December 23, 2014

_____
THEODORE D. CHUANG
United States District Judge